**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **NAUTILUS INSURANCE CO** | **CIVIL ACTION NO. 25-1229** |
| **VERSUS** | **JUDGE EDWARDS** |
| **BETHEL APARTMENTS INC** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING AND ORDER

Before the Court are two motions. The first is a Motion for Summary Judgment (R. Doc. 21) filed by Nautilus Insurance Company ("Plaintiff"). Bethel Apartments, Inc. ("Defendant") opposes. *See* R. Doc. 28. Thereafter, Plaintiff replied. *See* R. Doc. 30. The second is a Motion for Partial Dismissal (R. Doc. 48) filed by Plaintiff. This motion is also fully briefed. *See* R. Docs. 50 and 51.

Having carefully considered the parties' submissions and the applicable law, Plaintiff's Motions are **GRANTED**.

## BACKGROUND

### I. Factual Background

This case stems from two separate storms that damaged Defendant's apartment building located at 724 Willow Glen Road, Alexandria, Louisiana (the "Building"). *See* R. Doc. 21-1 at 5–6. The Building is a two-story, eight-unit residential apartment complex. *See* R. Doc. 21-4 at 19. Plaintiff issued two insurance policies covering the Building: one for the 2023 policy period and another for the 2024 policy period. *See* R. Doc. 21-1 at 6–7. Policy No. NN1506829 (the "2023 Policy") was in effect for the period February 4, 2023, to February 4, 2024. *See* R. Doc. 30 at 4. Policy No.

NN165043 (the "2024 Policy") was in effect for the period February 4, 2024, to February 4, 2025. *See* R. Doc. 21-2 at 1. The relevant provisions are discussed below.

On September 18, 2023, the Building sustained windstorm damage. *See id.* Defendant reported the loss to Plaintiff on September 25, 2023, under the 2023 Policy. *See id.* at 3. As a result of this storm, Defendant removed all tenants from the Building, relocated them to another complex that it owned, and disconnected all utilities. *See* R. Doc. 21-4 at 44–45, 54–55. Two days later, on September 27, 2023, an independent adjuster retained by Plaintiff inspected the Building, alongside Defendant's site maintenance supervisor and contractor. *See* R. Doc. 21-2 at 3. The inspection revealed that the windstorm created an opening in the Building's roof, allowing water to seep through and cause interior damage. *See* R. Doc. 21-3 at 1. Based on this inspection, the adjuster and Defendant's contractor prepared and agreed upon a repair estimate for the September 2023 loss. *See id.* The final repair estimate calculated a net claim of $39,595.03, derived from a replacement cost value of $51,938.63, less $2,343.60 in depreciation and the $10,000 deductible. *See id.* The following day, Plaintiff tendered $41,938.63 without deducting depreciation. *See* R. Doc. 21-2 at 2.

On February 6, 2024, River City Buildings, Inc.—Defendant's contracting company—filed a Building Permit Application on Defendant's behalf. *See* R. Doc. 21-5. The permit detailed the scope of the work as, among other things, removing and replacing the damaged roof and estimated the project's costs at $40,325.00. *See id.*

On March 4, 2024, the Building sustained damage from a second storm. *See* R. Doc. 21-2 at 1. Defendant reported a claim for this new damage the following day. *See id.* Plaintiff initiated the adjustment of this claim under the 2024 Policy. *See id.* Because of this, Plaintiff again retained the same independent adjuster, who inspected the Building on March 8, 2024. *See id.* During that inspection, the adjuster discovered that the September 2023 damage had not been repaired. *See* R. Doc. 21-3 at 2. Plaintiff also retained an engineer, who inspected the Building on August 29, 2024. *See* R. Doc. 21-7 at 1. He concluded that the March 2024 damage would not have occurred had the September 2023 damage been properly repaired. *See id.*

The parties also exchanged email correspondence concerning the potential relationship between the September 2023 and March 2024 claims. On March 19, 2024, a representative of Plaintiff stated that the adjuster observed additional damage due to the tarp being blown off the Building. *See* R. Doc. 28-3 at 2. He also said that "[t]his would be a continuation of the claim." *See id.*

## II. Relevant Policy Provisions

### *A. The 2023 Policy*

Two policies are relevant to the dispute: the 2023 Policy and the 2024 Policy. With respect to the Motion for Partial Dismissal, Plaintiff relies on the 2023 Policy's Legal Action Against Us condition. *See* R. Doc. 48-1 at 3. That provision states that "[n]o one may bring a legal action against [Plaintiff] under this Coverage part unless … [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." *See* R. Doc. 48-2 at 36.

*B. The 2024 Policy*

The 2024 Policy provides coverage for "direct physical loss of or damage to Covered Property at the [Building] caused by or resulting from any Covered Cause of Loss." *See* R. Doc. 21-6 at 88. That coverage, however, is subject to the 2024 Policy's exclusions and limitations. *See id.* at 123. According to Plaintiff, two provisions are particularly relevant here: the Vacancy Condition and the Neglect Exclusion.

The Vacancy Condition defines a building as "vacant" unless "at least 31% of its total square footage is: (i) [r]ented to a lessee or sublessee … to conduct its customary operations; and/or (ii) [u]sed by the building owner to conduct customary operations." *See id.* at 99. If the Building remains vacant for more than 60 days, the Vacancy Condition provides that the insurer will not pay for any loss or damage caused by water damage. *See id.*

The Neglect Exclusion excludes coverage for any loss or damage resulting from the "[n]eglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss." *See id.* at 126.

## III. Procedural History

On August 25, 2025, Plaintiff instituted this action for declaratory judgment. *See* R. Doc. 1. Specifically, Plaintiff seeks a declaration that the 2024 Policy does not provide coverage for damage to the Building arising from the March 2024 storm. *See id.* at 1. Plaintiff then filed the instant Motion for Summary Judgment on December 15, 2025, arguing that the 2024 Policy does not cover Defendant's March 2024 claim. *See* R. Doc. 21 at 1.

One week later, Defendant sought leave to file a counterclaim, *see* R. Doc. 25, which we granted on January 10, 2026. *See* R. Doc. 29. Defendant subsequently amended its Counterclaim. *See* R. Docs. 37, 46, and 47. In its Amended Counterclaim, Defendant alleges that Plaintiff failed to adequately compensate Defendant for the damages sustained to the Building as a result the September 2023 storm. *See* R. Doc. 47 at ¶ 9. Defendant also seeks bad faith penalties under La. R.S. §§ 22:1892 and 22:1973. *See id.* at ¶ 10. Plaintiff also moves to dismiss any claim related to the damage sustained by the September 2023 storm, arguing that such claims are prescribed under the 2023 Policy. *See* R. Doc. 48-1 at 1.

## LEGAL STANDARDS

### I. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility threshold requires "enough heft" to indicate to the Court that the party is entitled to the relief pled. *Id.* at 557. A complaint attacked by Rule 12(b)(6) does not need detailed factual allegations but requires more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* When evaluating a pleading, courts must accept all factual allegations as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, courts need not accept legal conclusions as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes [the Court] that actual proof of those alleged facts is improbable…."

*Twombly*, 550 U.S. at 556. However, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II. Summary Judgment

Under Rule 56(a), summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the

record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

If the movant meets its burden, the burden then shifts to the nonmoving party to make a showing sufficient to establish the existence of the essential elements of his claim on which he bears the burden of proof at trial. *Celotex*, 477 U.S. at 322. Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* at 322; *see also Hamilton v. Segue Software, Inc.* 232 F.3d 473, 477 (5th Cir. 2000) (providing that the nonmoving party must "show with 'significant probative evidence' that there exists a genuine issue of material fact") (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

## ANALYSIS

Plaintiff moves for summary judgment on the basis that the 2024 Policy does not cover Defendant's March 2024 claim. *See* R. Doc. 21 at 1. Plaintiff also seeks partial dismissal of Defendant's Amended Counterclaim based on prescription. *See* R. Doc. 48 at 1. We will take each in turn, starting with Plaintiff's Motion for Partial Dismissal.

### I. Motion for Partial Dismissal

Initially, we note what we may consider with respect to Plaintiff's Motion for Partial Dismissal. "We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff...." *Nevarez v. Dorris*, 135 F.4th 269, 271 n.1 (5th Cir. 2025) (citation modified). In evaluating this motion, we "can consider the pleadings, the motion to dismiss, and certain attachments to the motion to dismiss." *IberiaBank*

*Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")). Here, neither party challenges our consideration of the 2023 Policy, which is attached to Plaintiff's motion and referenced throughout Defendant's Amended Counterclaim. *See* R. Doc. 48-2; *see generally* R. Doc. 47. Therefore, we may consider the 2023 Policy attached to Plaintiff's motion. *See Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 671 F. Supp. 3d 722, 726 (E.D. La. 2023).

Plaintiff seeks partial dismissal of Defendant's Amended Counterclaim on the basis that Defendant's claims regarding the September 2023 storm are prescribed. *See* R. Doc. 48-1 at 1.

"While Louisiana law provides a ten-year prescriptive period for personal actions, Louisiana Civil Code article 3499, the parties to an insurance contract may contractually agree to limit the period within which a suit must be filed." *Cooper v. XYZ Ins. Co.*, No. 22-4980, 2024 WL 1776407, at *2 (W.D. La. Apr. 24, 2024) (citing *Noland v. Sun Life Assurance Co. of Canada*, 2001 WL 360775, at *1 (5th Cir. 2001)). "[I]n the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." W*ilson v. Louisiana Citizens Prop. Ins. Corp.*, 375 So. 3d 961, 962 (La. 1/10/24) (quoting *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721, 727 (La. 3/15/11). Indeed, "under Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit

must be filed," and "a contractual period of prescription is valid so long as it does not contravene a state statute or public policy." *Mansfield Rd., LLC v. Great Am. Ins. Co. of New York*, No. 21-1719, 2022 WL 16857018, at *3 (W.D. La. Nov. 10, 2022) (quoting *Noland*, 2001 WL 360775, at *1).

Here, the 2023 Policy contains a Legal Action Against Us condition, which provides that "[n]o one may bring a legal action against [Plaintiff] under this Coverage part unless … [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." *See* R. Doc. 48-2 at 36. Defendant has not contested the validity of this clause. *See generally* R. Doc. 50. And other courts have upheld similar clauses. *See Mansfield*, 2022 WL 16857018, at *3; *Melendez v. Southern Fid. Ins. Co.*, 503 F. Supp. 3d 504, 510 (E.D. La. 2020); *Crescent City Prop. Redevelopment Assocs., LLC v. Southern Fid. Ins., Inc.*, 158 So. 3d 100, 103–06 (La. App. 4th Cir. 12/17/14).

Per Defendant's Amended Counterclaim, September 18, 2023, is the date of loss. *See* R. Doc. 47 at ¶ 3. In other words, September 18, 2023, is the date on which the direct physical loss or damage occurred to the Building for which Defendant seeks relief through its Amended Counterclaim. *See id.* at ¶¶ 7, 8. Under the express language of the 2023 Policy, Defendant was required to seek relief by September 18, 2025, but failed to do so. Defendant relies on *Bryan v. La. Citizens Prop. Ins. Corp.*, 429 So. 3d 249 (La. 3/6/26) for the proposition that unconditional payments interrupt prescription on first party insurance claims. *See* R. Doc. 50 at 9. True, the Louisiana Supreme Court held in *Bryan* that an unconditional payment on an obligation

constitutes an acknowledgment and, thus, interrupts prescription. *See Bryan*, 429 So. 3d at 254. Nonetheless, Defendant's claim for damages in September 2023 is prescribed. Plaintiff tendered payment on October 24, 2023. *See* R. Doc. 21-2 at 2. Defendant did not move for leave to file its counterclaim until December 22, 2025. *See* R. Doc. 25.

But Defendant makes two additional arguments in opposition. First, Defendant contends that Plaintiff represented that the March 2024 claim was a continuation of the September 2023 claim. *See* R. Doc. 50 at 9; *see also* R. Doc. 28-3 at 2. That Defendant perceived Plaintiff's representative's communication as a confirmation of a continuation of the prior claim does not make it so. Put differently, Plaintiff's representation that the claims may be related does not, without more, mean that the September 2023 claim was part of a continuing claim. *See Williams v. Red Barn Chemicals, Inc.*, 188 So. 2d 78, 84 (La. Ct. App. 1966) (holding that the defendant's assurances and representations, without establishing any affirmative misrepresentations of material fact or law, were insufficient to suspend prescription); *see also Gines v. D.R. Horton, Inc.*, No. 08-598, 2011 WL 3236097, at *7 (M.D. La. July 28, 2011), *aff'd in part*, 699 F.3d 812 (5th Cir. 2012). Rather, as Plaintiff asserts, "[e]ach loss can only trigger coverage under the policy in effect on the date of the loss." *See* R. Doc. 51 at 2. Nor has Defendant demonstrated that the post-loss communication somehow interrupts prescription. And, moreover, Defendant

stipulates that the March 2024 claim was for additional damage sustained to the Building. *See* R. Doc. 50 at 7.[1]

Second, Defendant asserts that repairs to the Building "could not commence until permits were approved requiring additional subcontractors." *See* R. Doc. 50 at 9. In support of this assertion, Defendant relies on the testimony of Jasmine Wilson ("Ms. Wilson"), who managed the Building. *See* R. Doc. 21-4 at 7–8. In discussing the building permit submitted on February 6, 2024, Ms. Wilson testified at her deposition that certain "things had to be done in order to move forward with repairs." *See id.* at 40. However, she also testified that she did not know why the permit was not submitted until February 6, 2024, nor could she explain why repairs stalled after Plaintiff tendered payment, except that they awaited architectural plans. *See id.* at 38–40. In any event, these purported communications do not affect the date of loss nor the express and agreed-upon language in the 2023 Policy requiring Defendant to seek relief from the September 2023 storm within two years.

Accordingly, we find that Defendant's claims related to the September 2023 storm have prescribed.

## II. Motion for Summary Judgment

Plaintiff moves for summary judgment, asserting that no genuine issue of material fact exists as to whether the 2024 Policy covers Defendant's March 2024

---

[1] In its opposition, Defendant asserts that Plaintiff "renege[d] on [its] representation with a reservation of rights letter requesting an examination under oath from the insured's representative." *See* R. Doc. 50 at 8. Based on this letter, Defendant argues that July 23, 2024—the date Plaintiff sent this letter—would be the most accurate date for prescription to begin to run. *See id.* This is incorrect. The letter did not "renege" Plaintiff's representation. The letter only reserved Plaintiff's rights under the relevant policy and informed Defendant that the newly claimed damage needed to be investigated further. *See generally* R. Doc. 28-5.

claim. *See* R. Doc. 21 at 1. Plaintiff contends that the 2024 Policy's Vacancy Condition and Neglect Exclusion provisions preclude coverage in this case. *See id.* Defendant, however, avers that these provisions are inapplicable because of Plaintiff's alleged bad faith and constant communication with Defendant. *See* R. Doc. 28 at 5–6.

*a. Vacancy Condition*

The Vacancy Condition defines a building as "vacant" unless "at least 31% of its total square footage is: (i) [r]ented to a lessee or sublessee … to conduct its customary operations; and/or (ii) [u]sed by the building owner to conduct customary operations." *See* R. Doc. 21-6 at 99. If the Building remains vacant for more than sixty days, the Vacancy Condition provides that the insurer will not pay for any loss or damage caused by water damage. *See id.* The Vacancy Condition, however, is inapplicable if the Building is under construction or renovation. *See id.*[2]

The Building was vacant. Following the 2023 windstorm damage, Defendant relocated every tenant to other units. *See* R. Doc. 21-4 at 45. No tenant returned before the March 2024 storm. *See id.* Defendant also disconnected the Building's utilities. *See id.* at 54–55. And, in opposition, Defendant does not dispute these facts. *See* R. Doc. 28 at 5–6. Nor does Defendant argue that the Vacancy Condition is otherwise invalid. *See id.*

---

[2] Because Plaintiff instituted this declaratory judgment and now seeks summary judgment, they have flipped the typical insurance analysis on its head. That is, "[c]onsistent with general insurance principles, Louisiana requires the insured to first prove coverage, after which the insurer can show that an exclusion applies. That order is key: coverage must exist before it can be excluded." *See GeoVera Specialty Ins. Co. v. Joachin*, 964 F.3d 390, 394 (5th Cir. 2020) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 358–59 (5th Cir. 2010); *Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010 (La. 4/14/04); Kenn*ett v. USAA Gen. Indem. Co.*, 809 F. App'x 228, 232–33 (5th Cir. Apr. 21, 2020)) (cleaned up). Accordingly, for the purposes of this motion, we must assume that the losses sustained are covered by the 2024 Policy issued by Plaintiff.

Instead, Defendant argues that the Vacancy Condition is not applicable by pointing to two pieces of evidence, *see* R. Doc. 28 at 5–6, neither of which creates a genuine issue of material fact. First, Defendant relies on an email sent after the March 2024 storm suggesting that the March 2024 claim was a continuation from the September 2023 claim. *See id.* A post-loss communication does not affect whether the Vacancy Condition had already been triggered because the 2024 Policy was the contract between the parties. *See Bayou Liberty Prop., LLC v. Best Buy Stores, LP*, No. 14-1112, 2014 WL 6774197, at *4 (E.D. La. Dec. 2, 2014) ("Under Louisiana law, a contract between the parties is the law between them."). The 2024 Policy defined when the Building was considered vacant. *See* R. Doc. 21-6 at 99. Nothing in the Vacancy Condition suggests that a party may modify the definition of vacancy through an email communication. *See id.* Contrarily, the 2024 policy provided that the "terms can be amended or waived only by endorsement issued by [Plaintiff] and made a part of this policy." *See* R. Doc. 21-6 at 6. No evidence establishes an amendment or waiver of the Vacancy Condition in accordance with the 2024 Policy.

Second, Defendant asserts that its contractor communicated regularly with Plaintiff's adjuster from September 2023 through February 6, 2024, and that both understood that repairs could not commence until the building permits were approved. *See* R. Doc. 28 at 6. But Defendant's evidence relied upon does not support that assertion. Ms. Wilson testified that Plaintiff's adjuster communicated with Defendant's contractor during that period, that architectural plans had to be submitted to the fire marshal for approval, and that those approvals were necessary

before repairs could proceed. *See* R. Doc. 28-4 at 11. Critically, however, she could not explain why the permit application was not submitted until February 6, 2024. *See id.* Beyond Ms. Wilson's testimony, Defendant identifies no evidence documenting seven months of continuous communications, no evidence that repairs actually commenced, and no evidence that the Building was occupied or otherwise under construction or renovation during the relevant period.

And it is not our role to search for this evidence. A "court has no obligation to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Kim Kool Inc. v. Cobra Trucking LLC*, 605 F. Supp. 3d 881, 884 (W.D. La. 2022) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Likewise, we need not make arguments a party has failed to make. Se*e Louisiana State Conf. of Nat'l Ass'n for Advancement of Colored People v. Louisiana*, 490 F. Supp. 3d 982, 1032 (M.D. La. 2020), *aff'd sub nom. Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021) (citation and quotations omitted).

Regardless, the need for repairs and communication of repairs does not waive or negate an otherwise valid Vacancy Condition. *See Chapital v. Harry Kelleher & Co.*, 144 So. 3d 75, 85–86 (La. App. 4 Cir. 6/4/14) (finding that the insurer properly denied coverage under the policy's 60-day vacancy clause because the property had been vacant, and an alleged oral waiver by the insurer's adjuster was ineffective since the policy required any waiver to be in writing.). Likewise, even sporadic activity at a property also does not negate the Vacancy Condition where the Building has ceased to serve its customary operations. *See Miller v. Underwriters at Lloyd's London,*

*England*, 398 So. 2d 654, 656–57 (La. Ct. App. 1981). Thus, even assuming individuals occasionally entered the Building for limited purposes—which Defendant has not established nor has it attempted to assert in its light briefing—such irregular activity would not preclude our finding that the Building was vacant under the policy.

Here, the record is clear. The Building sustained wind damage in September 2023. *See* R. Doc. 21-2 at 1. Defendant vacated the Building, relocated every tenant, and disconnected its utilities. *See* R. Doc. 21-4 at 45, 54–55. Once the adjuster and contractor submitted an agreed-upon estimate, Plaintiff tendered payment for the covered loss the following day. *See* R. Doc. 21-2 at 1. Yet, no repairs commenced from October 2024 through March 2024. *See* R. Doc. 21-3 at 1–2; *see also* R. Doc. 21-4 at 11. In fact, Ms. Wilson cannot recall if or when she or Defendant's contractors ever entered the Building between the two storms. *See* R. Doc. 21-4 at 46–49. Then, in March 2024, a second storm damaged the Building. *See* R. Doc. 21-2 at 1. But this damage could have been avoided had the September 2023 damage been repaired with the funds tendered to Defendant. *See* R. Doc. 21-7 at 1. Nevertheless, the Building remained vacant well over sixty days. And Defendant relies on vague references to communications that are absent from the record before us, inviting us to draw conclusions and inferences the record does not support. Plaintiff has therefore satisfied its burden of demonstrating that the Vacancy Condition applies and excludes coverage for the March 2024 claim.

Accordingly, the 2024 Policy's Vacancy Condition, on the record before us, excludes recovery from the loss sustained on March 4, 2024. Therefore, summary judgment is warranted.[3]

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (R. Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Dismissal (R. Doc. 48) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall submit a Judgment in conformity with this ruling within fourteen (14) days.

**THUS DONE AND SIGNED** in Chambers this 28th day of September, 2026.

Jerry Edwards, Jr.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

[3] Because we conclude that the Vacancy Condition disposes of Plaintiff's Motion for Summary Judgment, we need not address the Neglect Exclusion.